HEARD NOVEMBER TERM, 1874.

## BENNETT *vs.* MATHEWES.

Where the question is, whether a certain paper was written by B., and the direct evidence thereon is conflicting, other papers, proved or admitted to have been written by B., and also the opinion of experts, wholly founded upon a comparison of the papers in question with such other papers, are admissible as evidence.

Where the issue is as to the validity of a paper propounded for probate as the last will and testament of a decedent, by one who is named therein as a devisee, and also as the executor thereof, and the Judge instructs the jury that the proponent "takes a considerable interest under the will," it is not error for him to decline to instruct them that the decedent "died intestate, as to any real estate not devised, which would descend to her next of kin."

BEFORE GRAHAM, J., AT CHARLESTON, MARCH TERM, 1873.

On the 6th day of January, 1872, Samuel L. Bennett proved, in common form, before the Judge of Probate for the County of

Charleston, a paper, purporting to be the last will and testament of Hannah Vesey, deceased, bearing date the 17th day of March, 1870, and on the same day qualified as executor thereof.

The paper had three subscribing witnesses, and was signed by the decedent with her mark. It recited that she was a widow, of the city of Charleston, of the age of seventy-five years, and of sound mind and memory, and then, after directing that her just debts and funeral expenses be paid, it purported, by the first ten disposing clauses thereof, to devise and bequeath to Anne Mathewes, Betsy Price, and several other persons, by name, certain interests in two houses and lots on Ashley Street, her household, kitchen and bed-room furniture, clothing and wearing apparel, and the sum of twenty dollars. In some of the devises the limitation to the devisee was "during her life, and to the heirs of her body, if any, and should she die leaving no heirs, as aforesaid," then to be rented and the rents divided. The 12th and 13th clauses were as follows:

"I give and bequeath to my friend, Samuel L. Bennett, his heirs and assigns, forever, my house and lot on Spring Street, north side, east of Ashley Street, and known as No. 56, and all the rest, residue and remainder of my personal estate, goods, chattels, of any kind, forever.

"Lastly. I hereby appoint Samuel L. Bennett my executor of this my last will and testament, hereby revoking former wills by me at any time made."

Anne Mathewes and others, as heirs of the decedent, filed their petition in the Court of Probate, demanding probate of the paper in solemn form, and on the 14th June, 1872, it was decreed, by the Judge of that Court, "to be the true legal last will and testament" of the decedent.

The contestants appealed to the Court of Common Pleas, and, at the hearing, the proponent called, among others, the subscribing witnesses, who testified to the execution of the paper with the formalities required by law. They further testified that the decedent could neither read nor write, and that the will was not read over to her in their presence. To prove that she knew its contents, the proponent was examined. He testified that he did not write the paper, and knew nothing of its contents until after the death of Hannah Vesey. He also testified to certain acts and declarations of hers which tended to show that she knew the paper was her will, and also knew its contents. On his cross examination certain let-

ters of his were produced, which he admitted had been written by him. They were submitted by the contestants, for the purpose, as their counsel said, of comparison with the handwriting of the will. Their introduction for that purpose was objected to, and the objection being overruled, the proponent excepted.

For the contestants Anne Mathewes was first examined as a witness. She testified that she had seen Bennett write—was well acquainted with his handwriting—and that she recognized the handwriting of the paper to be his. E. H. Sparkman, book-keeper of a bank, Wm. B. Heriot, a Notary Public and insurance agent, were then examined for the contestants, as experts. Each testified that he was unacquainted with Bennett's handwriting, but by comparing the handwriting of the letters with that of the paper propounded as a will, his opinion was that the latter was written by the same person who wrote the former.

The testimony of the experts was objected to on behalf of the proponent. The objection was overruled, and the proponent excepted.

His Honor charged the jury, amongst other points, that Bennett took a considerable interest under the will, and, that being the case, if they should find that the decedent could neither read nor write, and that Bennett drew the will, then it was necessary for him to show, besides the act of signing, that she knew the contents of the paper. The proponent's counsel requested him to charge—

That, by the provisions of the will, the devisee takes absolute interests upon the birth of issue, and that Hannah Vesey died intestate, as to any real estate not devised, and which descends to her next of kin.

This request was denied, and the proponent excepted.

The jury found for the contestants, and the proponent appealed, on the grounds:

1. Because His Honor, it is respectfully submitted, erred in permitting Messrs. W. B. Heriot and E. H. Sparkman, who had no previous knowledge of the handwriting of Samuel L. Bennett, to testify merely from a comparison of hands, to which testimony the proponent then and there excepted.

2. Because His Honor, it is respectfully submitted, erred in admitting in evidence the opinions of witnesses as to whether the will was or was not in the handwriting of Samuel L. Bennett, by com-

paring specimens of handwriting with each other, to which testimony the proponent then and there excepted.

3. Because His Honor, it is respectfully submitted, erred in refusing to instruct the jury as to any realty not specifically devised would revert to the next of kin of Hannah Vesey, to which refusal so to charge the proponent then and there excepted.

*Whaley & Mitchell, Simons & Segling,* for appellant.

*Whaley & Minot,* contra.

Feb. 18, 1875. The opinion of the Court was delivered by

Moses, C. J. This was an issue of *devisavit vel non.* The testatrix, an old and uneducated woman, had affixed her mark, in the presence of three subscribing witnesses, to a paper which was propounded as her last will and testament. Not having been read over in the presence of either of the subscribing witnesses, and neither of them affording any proof of her knowledge of its contents, it became necessary, in view of her doubtful capacity—not being able to read or write—to ascertain whether she had such knowledge through direct proof, or a presumption arising from the circumstances in evidence. Bennett, who took an interest under the will, and was nominated the sole executor, was introduced as a witness on the part of the proponent, and testified to declarations of the decedent, which, if his testimony had not been assailed and contradicted, would have been conclusive as to her knowledge of the contents. He swore that he did not write the will. In the course of his cross examination several letters, admitted to have been written by him, were produced, and to the enquiry, by the appellant's counsel, as to the object of their introduction, it was answered : that they were submitted for the purpose of comparison with the handwriting of the will. Exception was taken and overruled,

Anne Mathewes, (one of the respondents,) a witness offered by the contestants, swore that she had seen Bennett write—was well acquainted with his handwriting—and that she recognized the writing in the will to be his. Two witnesses were then presented who were unacquainted with his handwriting, and through them it was proposed to show, by a comparison of the admitted letters with the will, that the latter had been written by him. This was objected to, and the Circuit Judge overruling the exception, the first error assigned by

the motion now before us raises the question of the competency of the opinion of a witness unacquainted with the handwriting of a party and derived alone from comparison.

The genuineness of a writing may be directly proved by one who was present and saw it executed. This establishes it as a fact by the highest evidence, and, if it is credible, puts it beyond dispute.

Cases, however, arise where such express proof is not attainable, and then a resort must be had to such circumstances as may afford a presumption from which the fact may be legitimately inferred. Where the "*presumptio ex visu scriptionis,*" (as the writers term it,) arises, it is founded on a knowledge of the handwriting, obtained by having seen the person write. But the presumption is not limited to a knowledge thus acquired, but is extended to the "*presumptio ex scriptis olim visis,*" which is not restricted to a capacity to judge from having witnessed the actual execution of any writing by the party, but is extended to impressions derived from a familiarity with the handwriting, attained through letters or documents accepted and acted upon as genuine, with the recognition of those by whom they are alleged to have been written. Testimony of the character referred to has never been questioned, because, in both the distinct instances stated, an impression has been made on the mind of the witness, from the character of the writing, which enables him to bring to his recollection the similitude between what he before saw and that now submitted for his opinion. It is, at least, but a belief, founded on memory. It is not a certain knowledge of that which is acquired by actual vision of something passing, or the positive bearing of something that is expressed.

It would be a task, rather of interest than profit, to examine the various cases in which the subject has been treated by the English Courts. Whether a comparison, even by experts, should be permitted, has been, from time to time, differently ruled. While it may be said that the preponderating weight of authority there is against evidence, by comparison of handwriting, the cases have been vacillating and fluctuating. So far back as 1718, "where the will was writ blindly, and hardly legible, and the legacies in figures," the Master of the Rolls "referred it to a Master to examine what the legacies were, he to be assisted by such as were skilled in the art of writing."—*Masters* vs. *Masters*, 1 P. Wms., 425.

Later decisions entirely excluded all evidence by comparison ; and yet some of them so holding still subjected the rule which they

laid down to such exceptions as, in a great degree, to effect the very principle upon which it was claimed to have been founded—for instance, *Griffith* vs. *Williams*, 1 C. & P., 47; *Allport* vs. *Meek*, 4 C. & P., 276; and many other cases which may be cited.

Parliament, however, prevented any further want of conformity in the English Courts upon the question, by the Stat. of 28 and 29, Victoria, § 8, C. 18, which permitted a comparison, by jury and witnesses, of the disputed writing with papers satisfactory to the Judge. It appears, however, to be confined to civil cases.

In the several States of our Union different rules in regard to the question seem to prevail. In many of them the testimony is excluded, while in others it is admitted to the fullest extent. In Massachusetts, Maine, Connecticut, North Carolina, Ohio, Pennsylvania, and Vermont, it is allowed; while in New York, New Hampshire, Virginia, New Jersey, and some of the other States, the Courts exclude it.

It remains to consider what is the existing rule in this State, to be gathered from the practice and decisions of its Courts. We are probably not mistaken in saying that the rule, as generally accepted by the profession and observed by the Courts, is, that comparison, as the original means of ascertaining the genuineness of handwriting, is not permitted, but, in aid of doubtful proof, it is allowed; and that the question to be decided by the jury, as one of fact, may be affected, the one way or the other, by the preponderating character of the evidence. The testimony, however, it is agreed everywhere, even by the Courts in which it is admitted, is not entitled to any very high respect or consideration. Its relative weight must be determined by the rules which are applied to testimony of every kind, and its efficacy will be judged and estimated by the proportionate effect of its impression.

In *Boman* vs. *Plunkett*, 2 McC., 518, comparison of handwriting was admitted as a circumstance in aid of doubtful proof. It is contended, against the force of this case, as an authority of weight in the one before us, that it was therein held the comparison must be made by the jury, independent of any extrinsic evidence by witnesses. While the reasoning of the Court does not sustain such a construction, it would be difficult to reconcile it with any accepted theory or principle of evidence. If it is admitted that the jury may make the comparison, can it, with reason, be contended that, in their examination, the aid of light from those who, by their

peculiar vocation in life, have acquired a skill in deciphering, tracing and distinguishing handwriting, is to be withheld? When the right, on the part of the jury, is admitted, it should be exercised according to the general and accepted rules of evidence. Are they less likely to reach a correct conclusion, when the difficulties which may surround them in the execution of their duty might be satisfactorily explained and removed by testimony bearing on the very comparison they are to pass upon?

In *Bird* vs. *Miller*, 1 McM., 125, Mr. Justice Evans, delivering the opinion of the Court, treating of the inadmissibility of mere comparison of handwriting by juxtaposition, says: "Admitting the principle to be correct, that such evidence is inadmissible in the first instance, yet, in a case of conflicting evidence, this kind of evidence was admitted, in the case of *Plunkett* ads. *Boman*, not as original, but as confirmatory evidence, to enable the jury to decide upon which of the witnesses they could most confide. In a practice of many years I have not known the admissibility of this kind of evidence, for the purpose stated, questioned."

It would be difficult to explain why knowledge, which is derived from a recollection of handwriting only, from the observation of admitted letters, or other papers which the witnesses had before seen, can be claimed as of a higher degree than that obtained by a comparison of handwriting. They both depend on the same faculty—that of bringing into actual application impressions made on the mind, in the one case, weakened by time, and, in the other, more vivid and lively, because of more recent existence. One recollects because he has seen the admitted writing before, and can, therefore, now speak of its similarity with the one in question; the other because, by examining the admitted writing, he has a present impression which he at once makes the standard of his comparison.

Error is alleged on the part of the Circuit Judge in refusing to charge the jury that any realty, not specifically devised by the will, would revert to the next of kin of the said Hannah Vesey. The purpose proposed by this request was to show that Bennett took no interest, under any of the clauses of the will, save that which devised the Spring Street property to him. It is true that, "where a person prepares a will with a legacy to himself, it is, at most, a suspicious circumstance, of more or less weight, according to the facts of each particular case—in some of no weight at all—varying according to the circumstances; for instance, the *quantum* of the

legacy, and the proportion it bears to the property disposed of, and various other circumstances."—1 Williams on Ex'rs, 94. We think he fulfilled all the requirements of the rule when he said to the jury "that Bennett took a considerable interest under the will." If he was entitled, even, to no more than the Spring Street property, looking at its relative value to the whole estate devised, the language employed conveyed to the jury the proper meaning and import of the rule by which, in the application of the testimony, they were to be governed. It was not incumbent upon him to give construction to every section of the will, to ascertain the exact value of the interest to which the said devisee was entitled. Such a requisition would devolve a duty not demanded by the general principle which he fully brought to the attention of the jury.

The motion is dismissed.

*Wright,* A. J., and *Willard,* A. J., concurred.